UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CENTURIA, INC., | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CAUSE NO. 3:11-cv-02500-N |
| | § | |
| REGIMENT SECURITY, LLC and | § | |
| ADAM HAMON, INDIVIDUALLY, | § | |
| Defendants | § | |

## DEFENDANTS' ORIGINAL COUNTERCLAIM

COME NOW, REGIMENT SECURITY, LLC and ADAM HAMON, INDIVIDUALLY, Defendants, and file this their Original Counterclaim complaining of CENTURIA, INC, and for cause of action would respectfully show unto the Court as follows.

1. This Court has jurisdiction and venue over the parties and the subject matter of this Counterclaim.

2. In this Counterclaim, the term "Agreements" refers to the Consulting Agreement; Mutual Non-Disclosure, Non-Competition, and Non-Circumvention Agreement; and Employment Agreement entered into by and between the parties in or about March 2011.

3. Prior to the parties entering into any Agreements, Regiment/Hamon provided sophisticated security to international companies and high-profile individuals utilizing skills attained by Hamon in the British SAS and New Zealand SAS (or commonly referred to as special forces). Approximately 95% of Regiment's/Hamon's

DEFENDANTS' ORIGINAL COUNTERCLAIM-Page 1

business was based outside of the United States and involved "active" security such as evacuations, extractions, and personal security (or body guard) services.

4. Prior to the parties entering into any Agreements, Centuria provided "static" security almost exclusively in the United States. The term "static" security refers to the posting of night watchmen and persons to patrol the grounds of a corporate campus or secure the lobby of a building.

5. The Agreements between the parties emanated from Centuria's desire to utilize Regiment/Hamon's specialized skills to attract clients in the United States for active security assignments. Centuria falsely represented to Regiment/Harman, as inducements to enter into the Agreements, that Centuria would expend the funds necessary to lease, furnish, and outfit an office space in New York City (and specifically, in Manhattan) with such first class staff, furnishings and accoutrements necessary to make sales presentations to sophisticated corporations and individuals who were sought as clients for the new joint venture.

6. However, contrary to the obligations set forth in the Agreements and representations made by Centuria to induce the Agreements, Centuria failed to lease, furnish, and outfit an office space in New York City (and specifically, in Manhattan) with such first class staff, furnishings and necessary accoutrements. Centuria further failed to engage any staff for the New York office.

7. Per the Employment Agreement, Centuria was required to provide living quarters to Hamon; Centuria failed to comply with such provision. Further, Centuria has failed to pay to Hamon the final paycheck due and owing to Hamon for services rendered prior to Centuria's improper termination thereof.

8. Upon information and belief, Regiment/Hamon will show that Centuria fraudulently induced Regiment/Hamon to enter into the Agreements solely for the purpose of obtaining access to Regiment/Hamon's client contacts and trade secrets underlying the success of Regiment/Hamon's active security business.

9. In or about August 2011, Centuria determined that it either could not, or would not, comply with the terms of the Agreements and implemented a course of conduct designed to cause economic damages to Regiment/Hamon and to unlawfully appropriate for itself potential business and client contacts generated by Regiment/Hamon. Pursuant to such scheme, Centuria abruptly terminated the Agreements (via text message) without cause upon less than 90 days advance notice; such termination being a breach of the Agreements. Next, Centuria appropriated the cellular telephone number assigned to Hamon in an effort to establish its own direct communications with potential clients generated by Regiment/Hamon. Additionally, Centuria excluded Regiment/Hamon from negotiations with the Xavier Project client and attempted to secure such account for its own benefit, and to the exclusion of Regiment/Hamon. As mentioned, due to Centuria's ineptitude in the active security business, its exclusion of Regiment/Hamom resulted in the client terminating the engagement.

10. Regiment/Hamon brought the Xavier Project to the joint venture and provided to Centuria all facts, documents and information relevant to cause the Xavier Project to be contracted for by the joint venture. The Xavier Project client cancelled the engagement due solely to the incompetence and other unreasonable conduct of Centuria.

Therefore, Centuria is liable to Regiment/Hamon for the bonus that would have been earned upon successful engagement of the Xavier Project.

11. In or about May 2011 Centura requested that Hamon source and recommend to Centuria a reputable static guard company licensed in New York to replace the then-current subcontractor utilized by Centuria to provide static guard services at all AT&T stores in one of the boroughs of New York City. As an inducement for such assignment, Centuria offered to pay a bonus to Hamon equal to $1.00 per man-hour per location; being valued at approximately $400.00 per day or $12,000.00 per month. Hamon sourced and recommended Stone Security, which entity was engaged by Centuria. After the engagement of Stone Security, Centuria reneged on its promise to pay a bonus and asked that such bonus be applied to the expenses incurred in leasing, furnishing, staffing, and operating the New York City branch office to be opened by Centuria. Hamon reluctantly agreed to the diversion of his bonus; even thought the Agreements, and representations of Centuria prior to such Agreements, placed upon Centuria all financial obligations for leasing, furnishing, staffing and operating the New York City office. However, Centuria failed to lease, furnish, staff and operate a New York City office and therefore converted to its own use and benefit the bonus promised to Hamon. Such conduct constitutes fraud, fraudulent inducement and breach of contract.

## Breach of Contract

12. Regiment/Hamon would show that Centuria breached the Consulting Agreement and Employment Agreement by failing to comply with the terms and conditions thereof as stated above. Furhter, Centuria breached its agreement to pay a bonus to Hamon for his efforts in obtaining Stone Security for Centuria. The foregoing

breaches are the proximate cause of damages suffered by Regiment/Hamon in amounts to be calculated and provided in subsequent pleadings and/or discovery responses. All conditions precedent to Regiment's/Hamon's right of recovery under this cause of action have occurred or been performed.

### Fraud and Fraudulent Inducement

13. Regiment/Hamon would show that Centuria knowingly and intentionally misrepresented material information to Regiment/Hamon, as alleged above, as an inducement to cause, and which did so cause, Regiment/Hamon to decide to enter into the Agreements (and for Hamon to pursue his efforts to secure Stone Security for Centuria) in reasonable reliance upon the truth of the misrepresentations, which has resulted in economic harm to Regiment/Hamon. The foregoing constitutes fraud and fraudulent inducement by Centuria and is the proximate cause of damages suffered by Regiment/Hamon in amounts to be calculated and provided in subsequent pleadings and/or discovery responses. All conditions precedent to Regiment's/Hamon's right of recovery under this cause of action have occurred or been performed.

### Negligent Misrepresentation

14. Regiment/Hamon would show that Centuria misrepresented material information to Regiment/Hamon, as alleged above, as an inducement to cause, and which did so cause, Regiment/Hamon to decide to enter into the Agreements (and for Hamon to pursue his efforts to secure Stone Security for Centuria) in reasonable reliance upon the truth of the misrepresentations, which has resulted in economic harm to Regiment/Hamon. The foregoing constitutes negligent misrepresentation by Centuria and is the proximate cause of damages suffered by Regiment/Hamon in amounts to be

calculated and provided in subsequent pleadings and/or discovery responses. All conditions precedent to Regiment/Hamon's right of recovery under this cause of action have occurred or been performed.

## Tortious Interference

15. Regiment/Hamon would show that Regiment and Hamon had economic relationships with numerous prospective clients including, without limitation, the Xavier Project client, which prospective client relationships were known to or suspected by Centuria, and which prospective client relationships were knowingly and intentionally interfered with by Centuria resulting in economic harm to Regiment/Hamon. The foregoing constitutes tortious interference with prospective contracts and is the proximate cause of damages suffered by Regiment/Hamon in amounts to be calculated and provided in subsequent pleadings and/or discovery responses. All conditions precedent to Regiment's/Hamon's right of recovery under this cause of action have occurred or been performed.

WHEREFORE, REGIMENT SECURITY, LLC and ADAM HAMON, Defendants and Counter Plaintiffs, request that this Court deny all relief requested by Centuria, Inc. and grant judgment to Defendants/Counter-Plaintiffs, together with Court costs and such other and further relief to which it may show itself to be justly entitled. FURTHERMORE, Defendants, as Counter-Plaintiffs, requests that the Court grant judgment in favor of Counter-Plaintiffs and against Plaintiff/Counter-Defendant as prayed for in Defendants'/Counter-Plaintiffs' counterclaim.

        Respectfully submitted,

        SMITH & DAVIS, PLLC

         /s/ *William A. Smith*
        By: _____
         William A. Smith
         State Bar No.  18701600
         Thomas L. Davis
         State Bar No. 05549300
        10440 N. Central Expressway,
        Suite 1295
        Dallas, Texas 75231
        (214) 969-0219
        (214) 265-1802 Facsimile
        Attorneys for Defendants/Counter-Plaintiffs

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that a true and correct copy of this document has been delivered (____) via certified mail / (_xxx_) via facsimile, to all counsel on record, at the addresses, or facsimile numbers, set forth below, on this 11th day of October, 2011.

Darin Klemchuk,
Klemchuk Kubasta LLP
8150 N. Central Expy, 10th Floor
Dallas, Texas, 75206
Fax No. 214-367-6001

        /s/ *William A. Smith*
       _____
       William A. Smith

**DEFENDANTS' ORIGINAL COUNTERCLAIM-Page** 7