**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CENTURIA, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. 3:11-cv-02500-N** |
| | § | |
| **REGIMENT SECURITY, LLC and ADAM HAMON, INDIVIDUALLY,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**RESPONSE TO MOTION TO DISMISS DEFENDANTS' FRAUD AND FRAUDULENT INDUCEMENT AND TORTIOUS INTERFERENCE COUNTERCLAIMS OR, ALTERNATIVELY MOTION FOR LEAVE TO AMEND AND MEMORANDUM OF LAW**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Regiment Security, LLC and Adam Hamon, individually, (Defendants"), and file their Response to Motion to Dismiss Defendants' Fraud and Fraudulent Inducement and Tortious Interference Counterclaims ("Motion to Dismiss") or, Alternatively, Motion for Leave to Amend and Memorandum of Law, and would show as follows:

## FACTUAL BACKGROUND

1. On September 6, 2011, Plaintiff Centuria, Inc. ("Plaintiff"), commenced an action against Defendants in the 162nd Judicial District Court of Dallas County, Texas. This case was removed to this Court on September 23, 2011. On October 11, 2011, Defendants filed their Answer to the Complaint and Counterclaim. Additionally, Plaintiff and Defendants filed their Joint Status

Report on November 1, 2011.

2. Prior to the parties entering into any Agreements, Defendants had a successful foreign business which provided sophisticated security to international companies and high-profile individuals utilizing skills attained by Hamon in the British SAS and New Zealand SAS (or commonly referred to as 'special forces'). Approximately 95% of Defendants' business was based outside of the United States and involved "active" security such as evacuations, extractions, and personal security (or body guard) services. Prior to the parties entering into any Agreements, Plaintiff provided "static" security almost exclusively in the United States. The term "static" security refers to the posting of night watchmen and persons to patrol the grounds of a corporate campus or secure the lobby of a building.

3. Defendants and Plaintiff entered into a written agreement for Defendants to assist Plaintiff in securing agreements for foreign security services. Defendants allege that Plaintiffs breached the Contract, committed Fraud and Fraud in the Inducement, Negligent Misrepresentation, and Tortious Interference with prospective business relations. Plaintiff filed its Motion To Dismiss the claims of Fraud/Fraudulent Inducement and Tortious Interference arguing that Defendants failed to allege any factual basis for their claims. However, when the entire Counterclaim is examined, it is apparent Defendants have alleged sufficient facts to support their claims and Plaintiff's Motion to Dismiss should be denied.

## ARGUMENT AND AUTHORITIES

### Legal Standard

FRCP 8(a)(2) requires that a complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief" and FRCP 8(e)(1) requires that each averment be "concise and direct". In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 929 (2007), the Court took the opportunity, in the context of an antitrust case, to abrogate the fifty year old pleading standard by which litigants were guided in drafting claims for relief. The Court stated that in the context of a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face". *Twombly*, 550 U.S. at 570. In *Ashcroft v. Iqbal*, 556 U.S. 662, 874 (2009), in further discussing the pleading standard of facially plausible, the Court stated that "[a] claim [must have] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Construction Company v. Dallas Area Rapid Transit*, 369 F.3rd 464 (5th Cir. 2004)

Here, when the Counterclaim is reviewed in its entirety, and viewing the facts in the light most favorable to Plaintiff, it is clear that Defendants' Counterclaim meets the pleading standards of the Court and that Plaintiff's Motion to Dismiss should be denied.

**Tortious Interference Claims**

In *Ash v. Hack Branch Distrib. Co.* 54 S.W. 3d 401, 413-14 (Tex. App.-Waco, pet. den.) The court stated the elements of a tortious interference claim as follows: (1) reasonable probability that the plaintiff would have entered into a contractual relationship; (2) an intentional or malicious act by the defendant that prevented the relationship from occurring with the purpose of harming plaintiff; (3) lack of privilege or justification for the act; and (4) actual harm or damage to plaintiff as a result of the harm.

Plaintiff quotes from ¶ 15 of Defendants' counterclaim in which Defendant alleges that Plaintiff tortiously interfered with prospective relationships. However, Plaintiff fails to address the facts alleged in ¶ 9 of the Counterclaim. Specifically, Defendants alleged that Plaintiff implemented a course of conduct designed to cause economic damages to Defendants and to unlawfully appropriate for itself potential business and client contacts generated by Defendants through the following:

a. Plaintiff abruptly terminated the Agreements (via text message) without cause upon less than 90 days advance notice. Counterclaim ¶ 9;

b. Plaintiff appropriated the cellular telephone number of Defendant Hamon in an effort to establish its own direct communications with potential clients generated by Defendants. Counterclaim ¶ 9;

c. Plaintiff excluded Defendants from negotiations with the Xavier Project client and attempted to secure such account for its own benefit, and to the exclusion of Defendants. Counterclaim ¶ 9.

It is clear that in viewing the Counterclaim in its entirety and viewing the allegations in a light most favorable to Defendant, the Counterclaim alleges sufficient facts to support their claim. Plaintiff's Motion to Dismiss should be denied.

**Fraud/Fraudulent Inducement Claims**

Defendant alleges that Plaintiff committed fraud or fraudulently induced him into entering into a written agreement and that he suffered damages. In order to establish fraud/fraudulent inducement, Defendant must establish: (1) a "material" representation was made; (2) the

representation was false; (3) scienter as to the falsity of the representation at the time it was made, which may be satisfied with proof either that the speaker (a) had knowledge of the falsity, or (b) acted recklessly without knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).

Plaintiff quotes from ¶ 13 of Defendants' Counterclaim but again fails to address the facts alleged in other paragraphs of the Counterclaim. Specifically, Defendant alleges Plaintiff fraudulently induced Defendants to enter into the Agreements solely for the purpose of obtaining access to Defendants client contacts and trade secrets underlying the success of Defendants' active security business and alleges:

a. Plaintiff falsely represented to Defendants, as inducements to enter into the Agreements, that Plaintiff would expend the funds necessary to lease, furnish, and outfit an office space in New York City (and specifically, in Manhattan) with such first class staff, furnishings and accoutrements necessary to make sales presentations to sophisticated corporations and individuals who were sought as clients for the new joint venture. Counterclaim ¶ 5.

b. Plaintiff failed to lease, furnish, and outfit an office space in New York City (and specifically, in Manhattan) with such first class staff, furnishings and necessary accoutrements. Plaintiff further failed to engage any staff for the New York office. Counterclaim ¶ 6.

c. Plaintiff was required to provide living quarters to Defendant Hamon but failed to comply with such provision. Counterclaim ¶ 7.

d. In or about May 2011, Plaintiff requested that Defendant Hamon source and recommend to Plaintiff a reputable static guard company licensed in New York to replace the then-current subcontractor utilized by Plaintiff to provide static guard services at all AT&T stores in one of the boroughs of New York City. As an inducement for such assignment, Plaintiff offered to pay a bonus to Defendants equal to $1.00 per man-hour per location, being valued at approximately $400.00 per day or $12,000.00 per month. Defendant Hamon sourced and recommended Stone Security, which entity was engaged by Plaintiff. Counterclaim ¶ 9.

e. Plaintiff requested that Defendants agree to the diversion of the bonus to Hamon for leasing, furnishing, staffing and operating the New York City office. Counterclaim ¶ 9.

f. Defendant Hamon reluctantly agreed to the diversion of his bonus even though the Agreements, and representations of Plaintiff prior to such Agreements, placed upon Plaintiff all financial obligations for leasing, furnishing, staffing and operating the New York City office. Counterclaim ¶ 9.

g. Plaintiff converted to its own use and benefit the bonus promised to Defendant Hamon. Counterclaim ¶ 11.

h. Plaintiff excluded Defendant Hamon from negotiations with the Xavier Project client and attempted to secure such account for its own benefit, to the exclusion of

Defendants. Counterclaim ¶ 9.

The factual allegations demonstrate that Defendants have met their burden of pleading. Plaintiff made representations which were (1) material (staff an office in New York and share revenue), (2) the representations were false (Plaintiff did not follow through on any of its representations), (3) Plaintiff had knowledge of the falsity (made no attempt to offer alternatives or comply with the representations and summarily terminated the agreement), (4) Plaintiff intended that Defendants rely on them (Defendants were required to disclose confidential business information), (5) Defendants relied on them (shared confidential business information), and (6) Defendants suffered as a result. Thus, Defendants have pled factual allegations on each element of Fraud/Fraudulent Inducement and the Motion to Dismiss should be denied.

**Motion for Leave to Amend**

In the event this court finds that Defendant has not met its pleading requirement for the Counterclaim, Defendant requests that this court allow leave to amend its counterclaim. If the requisite allegations are not met and a motion to dismiss is filed, "the pleader should be given the opportunity to amend the complaint...". 5 C. Wright & Miller Federal Practice and Procedure §1216, at 235 (3d ed. 2004). This case was filed on September 6, 2011 and removed to this court on September 23, 2011. Allowing Defendant to replead the Counterclaim would not delay the proceedings nor prejudice the Plaintiff. Moreover, Defendant believes that subsequent to discovery, the parties would seek to amend their pleadings in order to conform to the evidence.

Wherefore, Defendant prays that the Motion to Dismiss filed by Plaintiff be denied, or alternatively, Defendant's Motion for Leave to Amend be granted.

Respectfully submitted

SMITH & DAVIS, PLLC

By: /s/ William A. Smith

William A. Smith
State Bar No. 18701600
Thomas L. Davis
State Bar No. 05549300
10440 N. Central Expy., Suite 1295
Dallas, Texas 75231
(214) 969-0909
(214) 969-5588 Telecopier

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 5th day of December 2011, a true and correct copy of the above and foregoing instrument was served by certified mail, return receipt requested, upon the following:

Darin M. Klemchuk
James E. Davis
Katherine B. Bandy
Klemchuk Kubasta, LLP
8150 N. Central Expressway
10th Floor
Dallas, Texas 75206

/s/ William A. Smith
William A. Smith